UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America and State of Minnesota *ex rel*. Ashley Mothershed,<br><br>Plaintiff-Relator,<br><br>v.<br><br>Mayo Clinic Ambulance,<br><br>Defendant. | Case No. 22-cv-602 (DWF/JFD)<br><br><br><br>**ORDER** |

This matter is before the Court on Plaintiff-Relator Ashley Mothershed's Motion to Compel Defendant Mayo Clinic Ambulance to produce discovery (Dkt. No. 106). The Court heard the motion on August 20, 2025. Grace Chanin and Rebekah Bailey, Esqs., appeared on behalf of Plaintiff-Relator Ashley Mothershed. Manda Sertich and Rachel Dougherty, Esqs., appeared on behalf of Mayo Clinic Ambulance. As set forth fully below, the Court grants the motion in part and denies it in part.

I.    **Background**

Ms. Mothershed worked for Mayo Clinic Ambulance ("Mayo") in its billing department from about November 2020 through June 2021 and from about September 2021 through May 2022. She initiated this *qui tam* action after learning that Mayo was submitting allegedly false claims to government healthcare payors, in violation of the federal and Minnesota False Claims Acts. In her Second Amended Complaint ("SAC"), which is the operative pleading, Ms. Mothershed alleged that Mayo engaged in three schemes: (1) billing for medically unnecessary ambulance transports, (2) upcoding non-

emergency ambulance transports to emergency transports, and (3) upcoding basic life support ("BLS") ambulance services to advanced life support ("ALS") services. (*See* SAC ¶ 2, Dkt. No. 72; Order at 3, Jan. 24, 2025, Dkt. No. 91 ("Dismissal Order").) The Honorable Donovan W. Frank, United States District Judge, dismissed the medical-necessity theory on Mayo's motion. (Dismissal Order at 18.) The two upcoding theories remain in the case.

The case is now in the discovery phase. Giving rise to the present motion is the parties' disagreement about discovery's temporal and substantive scope. As to the temporal scope, Ms. Mothershed argues she is entitled to discovery for the entire 10-year statute-of-limitations period, beginning on March 8, 2012, through the present. Mayo seeks to limit discovery to November 2020 to May 2022. As to the substantive scope of claims, Ms. Mothershed argues that discovery should not be limited to the specific examples of improper billing described in the SAC; rather, discovery should encompass all upcoding of non-emergency transports to emergency transports and all upcoding of BLS services to ALS services. Mayo disagrees and asks the Court to limit substantive discovery to the specific types of schemes described in the SAC. Also at issue in the motion to compel are documents responsive to Request for Production No. 23, which asks for documents concerning Mayo's investigations into any of Ms. Mothershed's complaints about improper billing, not just the billing practices alleged here.

## II.   Legal Standards

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

2

claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining proportionality, courts may consider several factors, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

If a party believes that the opposing party has failed to respond to discovery or served insufficient responses, it may "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The moving party must make a threshold showing of relevance. *Sherman v. Sheffield Fin., LLC*, 338 F.R.D. 247, 252 (D. Minn. 2021). Once relevance is shown, then the burden shifts to the opposing party to show that the discovery is not relevant or is unduly burdensome. *Patterson Dental Supply, Inc. v. Pace*, No. 19-CV-1940 (JNE/LIB), 2020 WL 10223625, at *20 (D. Minn. June 17, 2020); *St. Paul Reinsurance Co., Ltd. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

### III. Discussion

#### A. Temporal Scope

Ms. Mothershed argues that she is entitled to discovery from the entire statute-of-limitations period, from March 8, 2012 (10 years before the case was filed) through the present. (Pl.-Relator's Mem. Supp. Mot. Compel at 8 (citing 31 U.S.C. § 3731(b)(2)), Dkt. No. 122-2.[1]) Consistent with this timeline, her written discovery requests identified "March

---

[1] Ms. Mothershed requested and received permission to file a corrected memorandum in support of her motion, and the corrected memorandum is located at Dkt. No. 122-2.

8, 2012 through the present and continuing" as the default time period for discovery. (*E.g.*, Chanin Decl. Ex. 3 at 1, Dkt. No. 109-3.) This proposed timeframe would make the temporal scope of discovery more than 13 years. Mayo objects to this timeframe on the grounds of relevance and burden, among others.

The legal authority on temporal scope provided by Ms. Mothershed is of limited value because many of the cases do not involve claims brought under the False Claims Act ("FCA"). *E.g., Deering v. Lockheed Martin Corp.*, No. 20-CV-1534 (DSD/BRT), 2021 WL 1440182, at *2 (D. Minn. Apr. 16, 2021) (employment discrimination claims); *Johnson v. Charps Welding & Fabricating, Inc.*, No. 14-CV-2081 (RHK/LIB), 2015 WL 13883903, at *6 (D. Minn. May 14, 2015) (joint venture and alter ego claims); *Dryer v. Nat'l Football League*, No. 09-CV-2182 (PAM/SRN), 2010 WL 11469574, at *1 (D. Minn. Oct. 25, 2010) (false advertising, right of publicity, and unjust enrichment claims); *Doe I v. Mulcahy, Inc.*, No. 08-CV-306 (DWF/SRN), 2008 WL 11463252, at *1 (D. Minn. Nov. 6, 2008) (race discrimination, national origin discrimination, and retaliation claims).

This matters for several reasons. First, the nature of an FCA action provides context for relevance and proportionality. "The *qui tam* provisions of the FCA . . . authorize private citizens (called relators) to sue on behalf of the government and, as a bounty, share in any recovery." *United States ex rel. Newell v. City of St. Paul*, 728 F.3d 791, 794 (8th Cir. 2013). A "continuing conundrum in *qui tam* cases" is determining how wide a relator's insider knowledge should open the door to discovery, while preventing a "roving commission" into the defendant's billing practices. *United States ex rel. Grandeau v. Cancer Treatment Ctrs. of Am.*, No. 99-C-8287, 2003 WL 21504998, at *2 (N.D. Ill. June

4

30, 2003). In setting the temporal scope of discovery, courts should be mindful not to dissuade whistleblowing by, for example, limiting discovery to the relator's duration of employment, *see Fiederer v. Healing Hearts Home Care, Inc.*, No. 2:13-CV-1848-APG-VCF, 2014 WL 4666531, at *5 (D. Nev. Sept. 18, 2014), but must nonetheless guard against broad inquiries into other time periods that do not "hew closely to matters specifically described in the complaint," *United States ex rel. Dicken v. Northwest Eye Clinic, P.A.*, No. 13-CV-2691 (JNE/KMM), 2018 WL 2980394, at *2 (D. Minn. June 14, 2018) (quotation omitted). A complaint's cursory or superficial references to ongoing or systemic fraud do not warrant discovery of fraudulent claims for an extended period. *United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-CV-4672, 2013 WL 4525226, at *2–4 (E.D. Pa. Aug. 27, 2013) (declining plaintiff's request for seven years of discovery as a "fishing expedition" and limiting discovery period to two years).

Second, the statutes of limitations and relevant time periods in the non-FCA cases cited by Ms. Mothershed were significantly shorter than the 10-year statute of limitations and 13 years of discovery proposed here. *E.g., Deering*, 2021 WL 1440182, at *2 (setting a 7-year discovery period[2]); *Johnson*, 2015 WL 13883903, at *6 (setting a 6-year discovery period based on a potential 6-year statute of limitations); *Dryer*, 2010 WL 11469574, at *3 (limiting discovery to the 6-year statute-of-limitations period); *Doe I*, 2008 WL 11463252, at *1 (limiting discovery to the 4-year statute-of-limitations period). It stands to reason that

---

[2] The Court estimated a seven-year discovery period between the start date of January 1, 2014, and "the date of service of the document requests," which had to predate April 16, 2021, the date of the court's order. *See Deering*, 2021 WL 1440182, at *2–3.

5

the longer the requested timeframe, the greater the burden to show relevance and proportionality.

Third, Ms. Mothershed's authority does not hold that the time period for discovery is *necessarily* the same as the statute-of-limitations period. To the contrary, "while a statute of limitations can be a helpful point of reference," the party seeking the information must show it is "relevant and proportional." *Deering*, 2021 WL 1440182, at *2.

To meet her burden to show relevance and proportionality, Ms. Mothershed relies on several allegations in the SAC. One such allegation is made on paragraph 146:

> 146.   [Mayo employee Tessa] Leutink talked to Relator on a Skype phone call around September 2021, when Relator returned to work at Mayo Clinic Ambulance. Leutink told Relator that she went to a seminar *over ten years ago* about ambulance billing and realized that the manner in which Fennell[3] trained Mayo's billing department to bill constituted false billing. Leutink told Relator that she raised these concerns with her supervisors at the time, who told her she was wrong and overruled her concerns, similar to what had happened to Relator.

(Pl.-Relator's Mem. at 10; SAC ¶ 146) (emphasis added). After the motion to compel was fully briefed, however, Ms. Mothershed clarified to Mayo that the conversation described in paragraph 146 pertained only to the dismissed medical-necessity theory. (Mayo Ltr. at 2, Dkt. No. 118; Ex. A at 11, Dkt. No. 118-1.) At the motion hearing, Ms. Mothershed's counsel explained that the conversation was also about billing practices generally—not just medical necessity. Counsel did not represent, however, that the conversation covered Mayo's ALS or emergency upcoding practices. Thus, the Court finds that the allegations

---

[3] Thomas Fennell is identified in ¶ 59 of the SAC as Mayo's Regulatory Officer.

of paragraph 146, as clarified by Ms. Mothershed, are insufficient to establish relevance for discovery going back to 2012 on the surviving upcoding theories.

Ms. Mothershed also relies on paragraph 6 of the SAC, which alleges that the "relevant period" is "defined as the ten years prior to the filing of this lawsuit"; and paragraphs 43 and 120, which allege a timeframe "beginning as early as 2015 (and perhaps earlier) and continuing until at least 2022." (Pl.-Relator's Mem. at 10; SAC ¶¶ 6, 43, 120.) There are no allegations, however, as to *specific* services, practices, or billing activities that correspond with the years 2012 or 2015 (or, indeed, any year other than 2020, 2021, and 2022). In other words, there is no factual basis alleged in the SAC to support the conclusion that fraudulent activity had been going on since 2012 or 2015. "[R]ote allegations of 'ongoing' illegal activity, unaccompanied by allegations of specific instances of wrongdoing, are insufficient to justify discovery beyond the time period during which specific instances of wrongdoing have been alleged." *United States ex rel. Bilotta v. Novartis Pharms. Corp.*, No. 11-CV-0071 (PGG), 2015 WL 13649823, at *3 (S.D.N.Y. July 29, 2015) (citing cases); *cf. Dicken*, 2018 WL 2980394, at *2 (limiting discovery to a seven-year period from 2007 to 2014 where the complaint alleged dozens of examples of fraud between 2002 and 2014).

In the memorandum filed in support of her motion, Ms. Mothershed explains that she used data to support an extension of the relevant timeframe back to 2015, or earlier, and she directs the Court to paragraphs 56 and 123 of the SAC for the relevant allegations. (Pl.-Relator's Mem. at 10.) Paragraph 56 alleges the percentage of time Mayo billed ambulance transports as emergency (95.72%) or non-emergency (4.28%) for the timespan

7

of 2013 to 2022. (SAC ¶ 56.) The SAC then compares Mayo's numbers with Fairview Health Services (30% emergency transports) and Ohio Ambulance Solutions (34% non-emergency transports) and posits that the disparities "evidence[] Mayo's practice of routinely upcoding non-emergency transports and billing them as emergency." (SAC ¶¶ 57–58.) The Court cannot agree; that conclusion is too speculative. There could be any number of reasons for the billing disparities between Mayo and the two other ambulance services. Simply because Mayo billed ambulance transports as emergency more—even much more—than two other companies over a nine-year period does not mean Mayo must have engaged in fraudulent billing practices dating back to 2013. Further detracting from the relevance of paragraph 56, the data in paragraph 56 is not broken down by year but is presented as a single nine-year block, from 2013 to 2022. The Court cannot identify from that nine-year timespan the data for any given year, were the Court inclined to set a start date for discovery based on the data. In sum, paragraph 56 does not open the door to discovery dating back to 2012, 2013, 2015, or any other year.

Paragraph 123 of the SAC alleges that publicly available claims data for 2013–2022 reveals that Mayo bills 60% of its ambulance transports as ALS. (SAC ¶ 123.) The next paragraph conclusorily alleges that "Mayo routinely billed using ALS codes for ambulance transports that should have been billed as BLS." (SAC ¶ 124.) The SAC includes two examples of the alleged ALS billing practice occurring in 2021 (SAC ¶¶ 126–27), but there are no well-pleaded allegations dating back to 2012, 2013, or even 2015. The Court finds that paragraph 123 also does not warrant discovery dating back to any particular year other than 2021.

The last set of paragraphs identified by Ms. Mothershed as supporting the relevance and proportionality of a 13-year timeframe describes Mayo's "systemic" practices that, according to her, likely did not begin on the day she started working at Mayo. (Pl.-Relator's Mem. at 10 (citing SAC ¶¶ 2, 4, 6, 40, 41, 43, 146, 162, 163).) These paragraphs do not contain detailed factual matter sufficient to create a plausible allegation of fraudulent activity dating back to 2012, however. *Cf. Dalitz v. AmSurg Corp.*, No. 2:12-CV-2218-TLN-CKD, 2015 WL 8717398, at *4 (E.D. Cal. Dec. 15, 2015) (where detailed, specific allegations showed that the alleged fraudulent practices occurred before and after relator's employment, allowing discovery for a four-year period); *Fiederer*, 2014 WL 4666531, at *6 (where relator's "detailed allegations regarding . . . training and unwritten policies and procedures to alter patient records provide[d] a plausible allegation that the alleged illicit activity occurred in the past," allowing a six-year period for discovery). Cursory or superficial references to ongoing or systemic fraud do not warrant discovery of fraudulent claims for an extended period. *Spay*, 2013 WL 4525226, at *2–4; *Bilotta*, 2015 WL 13649823, at *3.

Nonetheless, Ms. Mothershed's position that, if there were fraud, it likely did not begin on the day she started working at Mayo is well-taken. Therefore, the Court will exercise its discretion and set the beginning of the relevant time period as November 1, 2018—two years before Ms. Mothershed began her employment at Mayo. If the discovery produced by Mayo indicates that fraudulent billing practices existed before November 1, 2018, Plaintiff may move the Court to expand the temporal scope of discovery.

9

The Court sets the end date for discovery as the date the original complaint was filed: March 8, 2022. The same considerations have applied in choosing this date. Ms. Mothershed has not identified well-pleaded allegations in the SAC from which the Court could conclude that fraudulent billing practices have continued to the present date. On the other hand, if fraud did occur, it probably did not stop on the date her employment ended. Without a specific allegation about when the disputed billing practices ended, setting the upper temporal limit for discovery as the date the initial complaint was filed is appropriate. *See, e.g., United States ex rel. Sirls v. Kindred Healthcare, Inc.*, No. 16-0683-KSM, 2024 WL 4438246, at *8 (E.D. Pa. Oct. 7, 2024).

### B. Substantive Scope

Ms. Mothershed's written discovery requests defined the subject matter of the case as "the factual allegations made in the Second Amended Complaint, or any subsequent amendments, Defendant's answer, as well as facts and events reasonably related to the allegations or defenses in this case." (*E.g.*, Chanin Decl. Ex. 1 at 4, Dkt. No. 109-1.) Mayo objected to the discovery requests to the extent their substantive scope exceeded the claims surviving the motion to dismiss and stated it would produce only documents that related to the upcoding claims.

The question is how broadly or narrowly to construe the alleged upcoding schemes. Mayo construes the schemes narrowly, using language from the representative examples alleged in the SAC. Mayo proposes to limit the emergency upcoding scheme only to situations *when a patient was transferred from one hospital to another*. Plaintiff, on the other hand, contends the emergency upcoding claim covers all upcoded emergency claims,

not just hospital-to-hospital transports. Mayo proposes to limit the ALS upcoding scheme only to situations *when the ALS assessment was performed by an EMT-Basic, instead of by a paramedic*,[4] and no separate ALS intervention was performed. Plaintiff, by contrast, describes her ALS upcoding claim as covering any time an ALS assessment or intervention was not performed.

The Court first addresses the alleged scheme of upcoding non-emergency transports to emergency, looking to the allegations in the SAC for guidance in determining relevance and proportionality. There is no question that the allegations focus on hospital-to-hospital transports. (*E.g.*, SAC ¶¶ 47, 50–52, 65–67). Judge Frank said as much in the Dismissal Order (Dismissal Order at 7), and all three representative examples in the SAC involved hospital-to-hospital transfers (SAC ¶¶ 65–67). Ms. Mothershed also alleges, however, that based on her knowledge and experience, Mayo coded ambulance transports as emergent "even when transports were scheduled in advance, were not provided in immediate response to a 911 call or equivalent, and/or did not begin as quickly as possible." (SAC ¶ 53.) A specific example of the latter is described in paragraph 155: "[T]he requested pickup time was changed multiple times, so ambulance crews could handle higher priority transports, that the pickup did not occur until 2.5 hours later, and the patient was transported straight to a room for a non-emergency admission, rather than going to the emergency room." (SAC ¶ 155.) Ms. Mothershed further alleges that she witnessed firsthand in emails

---

[4] Only individuals trained as emergency medical technicians ("EMT") at the Intermediate and Paramedic levels can be ALS personnel. 42 C.F.R. § 414.605. Individuals trained at the Basic level can provide only BLS ambulance services. *Id.*

and weekly meetings "Mayo's Regulatory Officer Tom Fennell direct[ing] Mayo's billing department to classify almost every transport as emergency, even when many transports did not meet the criteria for an emergency Code." (SAC ¶ 59.) The SAC alleges a transport of a patient to dialysis as a specific example. (SAC ¶ 61.) It was Mayo's "general practice," according to the SAC, "that when it dispatched an ambulance immediately after receiving a call, it would classify that trip as an emergency." (SAC ¶ 47.)

The Court finds that discovery of the emergency upcoding scheme should not be limited to hospital-to-hospital transports. The SAC alleges a broader scheme. The alleged scheme also includes transports dispatched immediately after a call, a transport to dialysis, transports scheduled in advance, transports that were not provided in immediate response to a 911 call, and transports that were not dispatched as quickly as possible. These allegations are based on Ms. Mothershed's personal knowledge and experience. Because the SAC "describes a general fact pattern of alleged fraudulent behavior supported by specific examples of that behavior," *United States ex rel. McCartor v. Rolls-Royce Corp.*, No. 1:08-CV-00133-WTL, 2013 WL 5348536, at *6 (S.D. Ind. Sept. 24, 2013), the Court will allow discovery into the larger fraudulent scheme of upcoding non-emergency transports to emergency. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007) (holding "where a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme"). The Court finds that discovery into the broader alleged scheme is relevant and proportional.

Next, the Court turns to the alleged scheme of upcoding BLS services to ALS services and looks to the allegations in the SAC to assess relevance and proportionality. The two specific examples alleged in the SAC describe situations where an EMT-Basic assessed the patient and neither an ALS assessment nor an ALS intervention was performed. (SAC ¶¶ 126–27.) Other than these two representative examples, the SAC provides no other specific information to support a broader fraudulent scheme. Other allegations conclusorily state that Mayo falsely characterized BLS services as ALS services. (*E.g.*, SAC ¶¶ 2, 6, 120, 124, 218, 236.) Thus, the Court will limit the scope of ALS-upcoding discovery to situations where Mayo billed for an ALS service when an EMT-Basic assessed the patient *and* neither an ALS assessment nor an ALS intervention was performed.

### C. Request for Production No. 23

Ms. Mothershed's Request for Production No. 23 asked Mayo to produce documents reflecting its investigations into any of her concerns that ambulance transports were being improperly coded and billed. Mayo objected to the request as seeking irrelevant, burdensome, and disproportionate information, but Mayo agreed to produce responsive documents related to Plaintiff's surviving upcoding claims. Plaintiff contends in her motion that Mayo's investigations into her complaints about false billing in general or about the dismissed medical-necessity theory remain relevant to Mayo's knowledge and scienter.

The Court denies this request. To establish liability under the FCA, a relator must show that the defendant acted knowingly with respect to the particular false claim at issue. *See* 31 U.S.C. § 3729(a)(1)(A). Ms. Mothershed has not shown how Mayo's knowledge

13

about alleged billing deficiencies in general or about the dismissed medical-necessity theory is relevant or proportional to the surviving upcoding claims. Further, to the extent Ms. Mothershed raised complaints that implicated multiple issues or billing submissions, which included the surviving upcoding claims, Mayo has already agreed to produce the documents.

Accordingly, based on all of the files, records, and proceedings here, **IT IS HEREBY ORDERED** that:

1. Ms. Mothershed's Motion to Compel (Dkt. No. 106) is **GRANTED in part and DENIED in part**, as follows.

2. Mayo's objection to the time period requested for Document Request Nos. 3–12, 15–22, and 25 and Interrogatory Nos. 3–5, and 7, which is "March 8, 2012 through the present and continuing," is overruled in part and sustained in part. The temporal scope for this discovery is from November 1, 2018, to March 8, 2022.

3. Mayo's objection that the scope for Document Request Nos. 3–12, 14–17, 19, 21, 23, and 25 and Interrogatory No. 7 should be limited to documents and information related to emergent hospital-to-hospital transfers and to ALS transfers where an EMT, rather than a paramedic, performed the ALS assessment, is overruled in part and sustained in part, as set forth fully above.

4. In response to Document Request No. 23, Mayo need not produce documents reflecting investigations into Ms. Mothershed's concerns that ambulance

transports were being improperly coded and billed other than responsive documents related to Plaintiff's surviving upcoding claims.

Dated: October 31, 2025      　　　　_s/ John F. Docherty_____
　　　　　　　　　　　　　　　　　　JOHN F. DOCHERTY
　　　　　　　　　　　　　　　　　　United States Magistrate Judge